IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

MCSI, INC.,

    Appellant

v.                                   CIVIL NO:  WDQ-03-3063

OMNEON VIDEO NETWORKS, INC.,      BANKRUPTCY NO.: 03-80169-JS

    Appellee.

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION AND ORDER

On June 3, 2003, MCSi, Inc. ("MCSi") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. As a result, MCSi was protected from the enforcement of any liens or judgments against it. See 11 U.S.C. § 362 (2004) (providing automatic stay).

On August 13, 2003, Omneon Video Networks, Inc. ("Omneon") filed a Motion for Relief from Stay to Reclaim Equipment ("Lift Stay Motion") with the United States Bankruptcy Court for the District of Maryland. Omneon claimed that it retained title to equipment that it had delivered to MCSi, and that it needed the stay lifted in order to repossess its property.

On October 8, 2003, the Bankruptcy Court determined that

Omneon retained title to the equipment and lifted the stay so that Omneon could repossess. The next day, MCSi filed a motion with the Bankruptcy Court seeking a stay of the Lift Stay Order pending appeal. The Bankruptcy Court granted MCSi's motion on October 14, 2003.

Pending is MCSi's appeal of the Bankruptcy Court's decision to lift the automatic stay. For the reasons discussed below, the Bankruptcy Court's decision lifting the stay will be reversed.

## BACKGROUND

MCSi supplies and integrates broadcasting and network technologies. Appellant's Br. 3. On February 24, 2003, MCSi and Omneon entered into a purchase agreement, intended to serve as a master agreement for future purchases of Omneon-manufactured equipment by MCSi for use in its business. *Id.* at 4.

In March 2003, MCSi issued a purchase order to Omneon for the acquisition of sophisticated video equipment ("the Equipment") for installation at the facility of MCSi's customer. *Id.* at 5. The total cost of the Equipment was approximately $242,000. *Id.*

Omneon had determined that MCSi was a credit risk. Hearing Tr. 34. Before delivering the Equipment to MCSi's

customer, therefore, Omneon required MCSi to enter into a Product Loan Agreement. *Id.* at 18-19. The agreement provided that:

1. Omneon has agreed to loan the products to MCSI. Omneon shall facilitate the delivery of the products to [MCSi's customer]. MCSI shall be responsible for shipping charges.
2. Omneon shall loan the products to . . . MCSI for a term of 30 days commencing on the date of installation.
3. MCSI shall bear the risk of loss and damage and shall exercise due care in maintaining the products during the loan period. MCSI shall not permit any lien or other encumbrance to be placed on the products while in their possession. Furthermore, MCSI shall not modify or alter the products during the loan period.
4. MCSI acknowledges that the products are to be used exclusively at [its customer's facility].
5. If MCSI fails to remit full payment for purchase by the end of the Term of this loan (30 days after installation), MCSI shall, at [its] cost and expense and risk of loss or damage, return the products, in the same condition as when received . . . . This loan shall be discharged when the equipment has been purchased, invoiced and paid in full.

Product Loan Agreement.

In April 2003, Omneon sent MCSi an invoice for the Equipment. Omneon Hearing Ex. 3. The invoice provided that 25% of the Equipment's purchase price was to be paid before the Equipment was shipped, and the remaining 75% was due upon its installation. *Id.*

On April 18, 2003, MCSi made the initial payment of 25% of the Equipment's value, approximately $61,000. Hearing Tr.

36. The Equipment was then shipped to MCSi's customer and installed. *Id.* at 44.

Omneon sent a letter to MCSi on May 22, 2003, stating that because the Equipment had been installed, the remaining 75% of the purchase price of the Equipment was due. MCSi's Hearing Ex. 4. MCSi filed its bankruptcy petition shortly thereafter and never remitted the outstanding balance to Omneon. Appellant's Br. 7.

## STANDARD OF REVIEW

The district court reviews the bankruptcy court's findings of fact for clear error and conclusions of law de novo. *Thomas v. GMAC Residential Funding Corporation*, 2004 U.S. Dist. LEXIS 7398, *5 (D. Md. 2004) (*citing Canal Corp. v. Finnman (In re Johnson)*, 960 F.2d 396, 399 (4th Cir. 1992)).

## ANALYSIS

Omneon argues that pursuant to the Product Loan Agreement, it retained title to the Equipment until MCSi paid the full purchase price. Appellee's Br. 10. Because MCSi never paid the full purchase price, Omneon asserts that the decision lifting the stay should be affirmed, allowing it to repossess the Equipment. *Id.* at 20-21. MCSi counters that §

2-401 of Maryland's Uniform Commercial Code (UCC) prohibits the retention of title after delivery, thus Omneon relinquished its title in the Equipment upon delivery and should not be permitted to repossess. *See generally*, Appellant's Br.

UCC § 2-401(1) provides that "[a]ny retention or reservation by the seller of the title . . . in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest." MD. CODE ANN., COM. LAW I § 2-401(1) (2002).[1] Where the intent of the parties to an agreement was to secure the deferred purchase price of goods, § 2-401 "operates to give effect to that intent by treating the outmoded reservation of title as creating a security interest." *Tilghman Hardware, Inc. v. Larrimore*, 331 Md. 390, 403 (1993). "Language expressly granting a security interest from buyer to seller is not required under these circumstances." *Id.*

The record indicates that Omneon intended to sell the Equipment to MSCi, using its retention of title in the Equipment after delivery to secure payment. The Product Loan Agreement states that the "loan shall be discharged when the

---

[1] A security interest is "an interest in personal property or fixtures which secures payment or performance of an obligation." § 1-201(37).

5

equipment has been *purchased, invoiced* and *paid in full*," indicating Omneon's expectation that MSCi would purchase, not just rent, the Equipment. Product Loan Agreement (emphasis added). Moreover, Dan Marshall, who drafted the Product Loan Agreement for Omneon, testified that Omneon did not consider the Product Loan Agreement a lease agreement. Hearing Tr. 30-31. Marshall testified that "it was [Omneon's] intent that [MSCi] exercise an option to purchase, which would ultimately result in the sale of the product that [Omneon] would get to recognize as revenue." *Id.*

Because Omneon intended to secure the deferred purchase price of the Equipment with its Product Loan Agreement, it retained only a security interest after the Equipment's delivery. Inasmuch as Omneon did not retain title to the Equipment, the Bankruptcy Court erred when it concluded that Omneon's title in the Equipment was sufficient cause for lifting the stay.

## CONCLUSION

For the reasons discussed above, the Bankruptcy Court's decision to lift the automatic stay will be reversed and this case remanded to the Bankruptcy Court for further proceedings in accordance with this Memorandum Opinion.

May 11, 2004                                  /s/
Date                                  William D. Quarles, Jr.
                                      United States District Judge